## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **NEW LIFE HOMECARE, INC;** : | No. 3:08cv1438 |
| J.R., a minor, by and through his : | |
| natural parent and guardian, Dawn : | (Judge Munley) |
| E. Litchey; : | |
| A.R., a minor, by and through his : | |
| natural parent Dawn E. Litchey, and : | |
| Dawn E. Litchey, individually, : | |
| : | |
| v. : | |
| : | |
| **BLUE CROSS BLUE SHIELD OF** : | |
| **MICHIGAN, and** : | |
| **BLUE CARE NETWORK OF** : | |
| **MICHIGAN,** : | |
| **Defendants** : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

### **MEMORANDUM**

Before the court is defendants' motion to dismiss, or in the alternative for summary judgment (Doc. 11). Having been fully briefed and argued, the matter is thus ripe for disposition.

**Background**

The case grows out of the refusal of the defendant, Blue Cross Blue Shield of Michigan ("Blue Cross"), to purchase medications to treat Minor Plaintiffs A.R. and J.R. ("minor plaintiffs") for hemophilia from Plaintiff New Life Homecare. Blue Cross administers the minor plaintiffs' insurance policy, which is provided for them through their fathers' employment with General Dynamics Corporation.

A.R. and J.R., the minor plaintiffs in this case, suffer from hemophilia, a

genetic disorder marked by a deficiency in essential blood-clotting proteins in a patient's body.[1] Patients treat their condition by using a number of injectable medications which aid in the blood-clotting process. These medications, which come in a variety of formulations, are generally referred to as "factor."[2] J.R., who is A.R.'s older brother, suffers from a more severe form of the disease. He has developed an "inhibitor" to factor that often prevents the medication from working. His disease is more debilitating as a result, and he requires different, more extensive and more often emergency treatment than his brother. Since August 1, 2008, they have received these medications through a home-delivery pharmacy, Accredo (also known as Hemophilia Health Services), which provides them their medications at home on both a regular and emergency basis. Formerly, the minor plaintiffs received their home-care medications through Plaintiff New Life, another licensed

---

[1] "Hemophilia is a rare, inherited bleeding disorder in which your blood doesn't clot normally. If you have hemophilia, you may bleed for a longer time than others after an injury. You may also bleed internally, especially in your knees, ankles, and elbows. This bleeding can damage your organs or tissues and, sometimes, be fatal. People born with hemophilia have little to none of a protein needed for normal blood clotting. The protein is called a clotting factor. There are several types of clotting factors, and they work together with platelets to help the blood clot. Platelets are small pieces of blood cells that are formed in the bone marrow. They play a major role in blood clotting." U.S. Department of Health and Human Services, National Heart Lung and Blood Institute, Diseases and Conditions Index, HEMOPHILIA: WHAT IS HEMOPHLIA?, available at http://www.nhlbi.nih.gov/health/dci/Diseases/hemophilia/hemophilia_what.html.

[2] "The main treatment for hemophilia is called replacement therapy–giving or replacing the clotting factor that's too low or missing. Concentrates of clotting factor VIII (for hemophilia A) or clotting factor IX (for hemophilia B) are slowing dripped in or injected into a vein." Id., HOW IS HEMOPHILIA TREATED?, available at http://www.nhlbi.nih.gov/health/dci/Diseases/hemophilia/hemophilia_treatments.html.

pharmacy that specializes in care for those with hemophilia and other blood-related diseases.  In their complaint, plaintiffs allege that defendants engaged in unfair practices in order to sever their relationship with New Life and replace it with Accredo.  They also contend that the services provided by Accredo are inferior and fail to provide them with necessary ancillary services, such as counseling, pastoral support, and medical devices.  Combined with a longer delivery time for emergency medications, plaintiff alleges, Accredo's service is substandard and endangers their health.

Plaintiffs filed a complaint in this court on July 31, 2008.  (Doc. 1).  Count I raises a breach of fiduciary duty claim pursuant to the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1109 and 1132(A)(2).  Count II is a claim pursuant to 29 U.S.C. § 1133(2) for breach of duties owed to Plaintiff New Life.  New Life alleges that defendants have not provided payment for valid claims submitted pursuant to the minor plaintiffs' policy.  Count III is a state law conversion action, contending that Defendant Blue Cross Blue Shield has refused to reimburse New Life for valid claims.  This count seeks nearly $4 million in damages.  Count IV, brought pursuant to the Hobbs Act, 18 U.S.C. § 1951, alleges that defendants engaged in a scheme to obstruct, delay and affect commerce and the movement of specialty drugs from wholesalers to New Life and from New Life to the Minor Plaintiffs.  Count V alleges discrimination based on health status in violation of 26 U.S.C. § 9802(a)(1) and 29 U.S.C. § 1182(a)(1), contending that the defendants

3

discriminated against the plaintiffs on the basis of their medical condition by refusing to provide them with services from New Life.  The minor plaintiffs also seek monetary damages as compensation for the discrimination they allegedly faced from defendants' conduct.

Plaintiffs filed a motion for a Temporary Restraining Order (TRO) and Preliminary Injunction (PI) on July 31, 2008.  (Doc. 2).  The court set a date for a hearing on the TRO (Doc. 4), but the parties informed the court that they had entered into a partial settlement agreement and no hearing on the application was necessary.  (Doc. 10).  On September 30, 2008, defendants filed a motion to dismiss the complaint and for summary judgment.  (Doc. 11).

On October 3, 2008, the plaintiffs renewed their motion for a TRO and PI. (Doc. 13).  The court held a hearing on this motion on October 8, 2008.  At the close of the hearing, the court ordered the parties to file briefs on their positions.  On November 4, 2008, the court issued a memorandum and order denying the plaintiffs' request for injunctive relief.  (Doc. 36).  The parties then filed additional briefs on the defendants' motion to dismiss or for summary judgment.  The court held argument on that motion on February 4, 2009, bringing the case to its present posture.

**Jurisdiction**

Because this case is brought pursuant to ERISA, 29 U.S.C. § 1001, *et seq.*, the court has jurisdiction pursuant to 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or

treaties of the United States."). The court has jurisdiction over plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a) ("In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article II of the United States Constitution.").

**Legal Standard**

When a 12(b)(6) motion is filed, the sufficiency of a complaint's allegations are tested. The issue is whether the facts alleged in the complaint, if true, support a claim upon which relief can be granted. In deciding a 12(b)(6) motion, the court must accept as true all factual allegations in the complaint and give the pleader the benefit of all reasonable inferences that can fairly be drawn therefrom, and view them in the light most favorable to the plaintiff. Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).

In the alternative, defendants seek summary judgment on the plaintiffs' claims. Granting summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an

otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. Int'l Raw Materials, Ltd. v. Stauffer Chemical Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson, 477 U.S. at 248 (1986). A fact is material when it might affect the outcome of the suit under the governing law. Id. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324.

**Discussion**

The defendants raise several grounds for granting their motion. The court will address each in turn.

**a. Plaintiffs lack standing to raise a claim under 29 U.S.C. § 1132(a)(2)**

**and do not seek to recover assets on the plan's behalf**

In count one of their complaint, plaintiffs allege that BCBSM breached its fiduciary duty under 29 U.S.C. § 1132(a)(2). New Life alleges that as a provider of drugs and prescriptions, it submitted proper claims for factor to BCBSM, and those have not been paid. Moreover, in failing to pay the claims BCBSM breached its fiduciary duties to New Life and to the minor plaintiffs by putting those minor plaintiffs at medical risk. Defendant argues that New Life, as a provider under the plan, lacks standing to sue. Likewise, Dawn Litchey does not argue that she is a plan participant, beneficiary or fiduciary, and likewise lacks standing. Defendant appears to agree that the minor plaintiffs are beneficiaries of the plan, but contends that they cannot make out a claim for breach of fiduciary duty based on their alleged inability to secure proper medical care.

The court finds that no right to recovery exists under this claim for any of the plaintiffs. First, Plaintiffs A.R. and J.R. cannot make out any claim for breach of fiduciary duty under ERISA. The Third Circuit Court of Appeals has described the role of a fiduciary in an ERISA plan as follows:

> Under § 1002(21)A of ERISA, 29 U.S.C. § 1002(21)A, those having discretionary authority or discretionary responsibility in the administration of a plan are fiduciaries. Section 1104 imposes upon them fiduciary duties including the duties of 'care, skill, prudence, and diligence under the circumstances.'" 29 U.S.C. § 1104. Section 1109(a) makes plan fiduciaries 'personally liable to make good to [the] plan any losses to the plan resulting from each . . . breach' of fiduciary duty. 29 U.S.C. § 1109(a). And, finally, § 1132(a)(2) provides that a 'civil action may be brought . . . by a participant or beneficiary . . . for appropriate relief under section 1109.' 29 U.S.C. § 1109.

In re Schering-Plough Corp. ERISA Litig., 420 F.3d 231, 235 (3d Cir. 2005).

In this case, plaintiffs contend that defendants breached their fiduciary duty by failing to pay claims to New Life, which placed the plaintiffs' medical care at risk. The evidence indicates, however, that plaintiff were never in medical danger and that they never were denied the life-saving treatment they require. While the court recognizes that the plaintiffs would prefer the more-extensive services offered by New Life to those provided by Accredo, no evidence indicates that plaintiffs have been denied necessary medication or any benefits due them under the terms of the plan. They received the services for which New Life claims to have been denied payment. Under the plan, plaintiff's are due benefits, not the payment for the benefits. A claim for breach of fiduciary duty under ERISA cannot lie based on a failure to provide benefits when the plaintiff has received the benefits she is due under the plan. See, e.g., Becker v. Weinberg Group, Inc., 473 F. Supp. 2d 48, 67 (D. D.C. 2007) (finding that "[w]here, as here, a beneficiary has received her pension plan benefits, that beneficiary no longer has any personal stake in the outcome of the litigation. As a result of the Plan's payment of her benefits, Plaintiff's interest in the breach of fiduciary duties and prohibited transactions claims has become moot.").

New Life, as a plan provider, clearly has no claim for breach of fiduciary duty under ERISA against the defendants. Section 1132(a)(2) provides a right to sue only to "the Secretary . . . participant, beneficiary or fiduciary." 29 U.S.C. § 1132. Moreover, while the plan may have a duty to pay a provider for services, it has no

8

fiduciary duty under the law to providers. Indeed, any funds obtained from defendant would be paid to New Life, not the plan, and thus would not benefit the plan. Because "a recovery under Section 409 for damages for breach of fiduciary duty does not go to any individual plan participant or beneficiary, but inures to the benefit of the plan as a whole," a claim seeking recovery for a *provider* does not implicate the breach of fiduciary section of ERISA. McMahon v. McDowell, 749 F.2d 100, 109 (3d Cir. 1986). As such, no claim is possible under 29 U.S.C. § 1132(a) for New Life.³ To avoid this obvious difficulty, Plaintiff New Life also argues that it has standing as an assignee of A.R. and J.R.'s rights. Since A.R. and J.R. have no claim under ERISA, however, New Life would have no claim even if the court found a valid assignment of rights. The court will therefore grant the defendants' motion on this claim.

---

³In any case, "to recover damages from the employer . . . or from the pension plans' fiduciaries, plaintiff must first demonstrate that the fiduciaries have breached their fiduciary duties." McMahon, 794 F.2d at 109. As the court understands the plaintiff's claims, they argue that the breach of fiduciary duty came in choosing Accredo over New Life as the factor provider for the minor plaintiffs. Testimony at the injunction hearing indicated that the plan's fiduciaries made their decision because they concluded that using Accredo would save a considerable amount of money, would allow the company to avoid putting a lifetime cap on benefits that would exclude the minor plaintiffs from coverage, and would provide them with essential services. (See Testimony of Lawrence Kish, (Doc. 24) (hereinafter "T." at 76-99) at The company felt the minor plaintiffs would be served adequately: "we had looked at it, and we didn't think that there would be any harm in it, because they had used them in the past." (Id. at 86). Plaintiffs have not contradicted this testimony, other than to argue that the services provided by New Life are better and more extensive. This decision meets the statutory requirement that the fiduciary "must act 'with the same care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims.'" Id. at 110

9

**b. Plaintiffs may not sue under ERISA, 29 U.S.C. § 1133(2)**

Defendants also seek dismissal of plaintiff's claim that BCBSM breached its duties to New Life when it failed to provide the plaintiffs a reasonable opportunity for a full review prior to defendants' withholding of payment for approved claims. Section 1133 of ERISA provides that a plan must "(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, . . . and (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133.

Plaintiff New Life cannot prevail under this statute, as New Life is a provider and not a participant in the plan and thus not covered by the provision.[4] New Life's remedy for non-payment of valid claims is not through this statute. See, e.g., New Life Homecare, Inc. v. Blue Cross, 43 Employee Benefits Cas. (BNA) 2106 at *37 (M.D. Pa. 2008). The minor plaintiffs insist that they were denied benefits when defendant failed to pay New Life and thus have standing to sue under this provision. The minor plaintiffs do not allege, however, that the defendant ever informed them that they were ineligible for benefits or that a claim had been denied. They also do not allege that they failed to receive the benefits they were due under the policy:

---

[4] The statute defines a "participant" as "any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer . . . , or whose beneficiaries may be eligible to receive such benefit." 29 U.S.C. § 1002(7).

10

plaintiffs received the medications which their condition required. In short, no allegation exists that the minor plaintiffs were denied anything except the ability to use New Life as a provider. As such, defendants would not be required to provide an opportunity for review under this statute.[5] The court will therefore grant the defendants' motion on this claim as well.

### c. Plaintiffs' Conversion Claim

Defendant also argues that New Life's conversion claim against BCBSM should be dismissed. The basis of that claim is that BCBSM failed to pay New Life funds pursuant to New Life's agreement with Highmark Blue Shield, a third party. The claim here, defendant argues, is for money owed under a contract or debt, and thus cannot be a conversion claim under Pennsylvania law.

"'Conversion is the deprivation of another's right of property in, or use or possession of, a chattel, without the owner's consent and without lawful justification." Francis J. Bernhardt, III, P.C. v. Needleman, 705 A.2d 875, 878 (Pa. Super. Ct. 1998) (quoting Shonberger v. Oswell, 530 A.2d 112, 114 (Pa. Super. Ct. 1987)). "Identifiable funds are deemed a chattel for the purposes of conversion." Pioneer Commer. Funding Corp. v. Am. Fin. Mortg. Corp., 855 A.2d 818, 827 n.7 (Pa. 2004). At the same time, "failure to pay a debt is not conversion." Needleman, 705 A.2d at

---

[5]This claim appears to be an attempt to force defendants to use New Life as a provider under the plan, even though none of the parties argues that the plan allows the minor plaintiffs to choose their provider for hemophilia services. This particular ERISA provision is designed to allow plan participants to dispute improper denials of benefits, not to allow participants to determine which providers they want to use.

11

878. Moreover, Pennsylvania courts have been clear that the "gist of the action" doctrine "precludes plaintiffs from re-casting ordinary breach of contract claims into tort claims." eToll, Inc. v. Elias/Savon Adver., 811 a.2d 10, 14 (Pa. Super. Ct. ). Courts seek to maintain the distinction between tort actions and contract actions because:

> although they derive from a common origin, distinct differences between civil actions for tort and contract breach have developed at common law. Tort actions lie for breaches of duties imposed by law as a matter of social policy, while contract actions lie only for breaches of duties imposed by mutual consensus agreements between particular individuals . . . To permit a promisee to sue his promisor in tort for breaches of contract inter se would erode the usual rules of contractual recovery and inject confusion into our well-settled forms of actions.

Bash v. Bell Tell. Co., 601 A.2d 825, 829 (Pa. Super. Ct. ) (quoting Iron Mountain Security Storage Corporation v. American Specialty Foods, Inc., 457 F. Supp. 1158, 1165 (E.D. Pa. 1978)). Thus, "courts have firmly accepted the doctrine that an action for conversion will not lie where damages asserted are essentially damages for breach contract." Montgomery v. Federal Ins. Co., 826 F.Supp. 292, 301 (E.D. Pa. 1993).

This case is like Pittsburgh Constr. Co. v. Griffith, 834 A.2d 572, 584 (Pa. Super Ct. 2003), where the Pennsylvania Superior Court refused to allow plaintiff to "interject a claim for tortious conversion into an action that is decidedly contractual." In Griffith, the defendants had borrowed funds which were placed in an escrow account and disbursed to the plaintiff, who was involved in building defendants' home, on a draw schedule. Id. at 583. Dissatisfied with the plaintiff's work, the

12

defendants eventually directed their bank to withhold further payment. Id. The plaintiffs sued both in contract and tort, and the court rejected the conversion claim. Id. at 584. In rejecting the claim, the court noted that the "tort and breach of contract claims are inextricably intertwined, the success of the conversion claim depending entirely on the obligations as defined by the contract." Id. Here, plaintiffs did not bring a tort claim for the monies owed under the contract, and they contend that defendants have not denied the funds are due under the agreement between the parties. Nevertheless, the plaintiff has a claim on the money held by defendants only by virtue of the contractual agreement. Plaintiffs could obtain those funds only by proving that a contract existed between the parties and defendants had failed to perform on their contractual obligations. As such, a conversion claim is inappropriate and the court will grant the defendants' motion on this point as well.

### d. Hobbs Act claim

Defendants also seek dismissal of plaintiffs' claims under the Hobbs Act, 18 U.S.C. § 1951, which is a criminal anti-extortion statute. New Life alleges that defendants "obstructed, delayed and affected commerce by prohibiting reimbursement payments" in its effort to force New Life to adjust its prices. This action allegedly prevented the minor plaintiffs from obtaining necessary drugs. Defendants asset that no private right of action exists under this criminal statute. The Hobbs Act confers no private right of action, legislative history does not suggest that Congress intended to create such a right, and the statute provides only for

criminal sanctions.

Plaintiffs agree that they have no claim here. The court will therefore grant the motion on these claims.

### e. Discrimination Based on Health Status

Plaintiffs also allege BCBSM violated federal law by providing information to General Dynamics which induced the company to deny only Scranton-area hemophiliacs access to pharmacy benefits. The statute in question, the Health Insurance Portability and Accountability Act (HIPAA), which is codified at 29 U.S.C. § 1182(a)(1) provides that "a group health plan . . . may not establish rules for eligibility (including continued eligibility) of any individual to enroll under the terms of the plan based on any of the following health status-related factors in relation to the individual or a dependent of the individual: (A) health status." Section 1182(a)(2) of the statue provides, however, that the law does not require a plan "to provide particular benefits other than those provided under the terms of such plan or coverage."

BCBSM argues that it is not liable under this act because it did not have authority to change the General Dynamics plan or the benefits its provided. BCBSM, defendant argues, cannot be liable for a decision to change the benefit design made by someone else. Moreover, the statute in question forbids a discriminatory standard for eligibility, not for use of a particular provider. In this case, the minor plaintiffs have coverage under the plan and cannot claim they were discriminated against in terms of eligibility.

14

Plaintiffs argue that the act does not prohibit access to particular providers and benefits (though they do not explain how or why). Moreover, they claim, the agreement between the companies provides that BCBSM will maintain a sufficient number of providers and provide adequate choices for the participants to obtain the benefits they require. They also contend that the plan discriminates on the basis of health status. Only Scranton-area hemophiliacs do not have a choice in factor providers, and only they fail to receive other services that New Life, but not Accredo, provides. This means that while plaintiffs have not been limited in their ability to enroll in the plan, they have been limited because of their health status in their continued eligibility for the plan and are not eligible for the extra services provided by New Life because of their condition.

The Health Insurance Portability and Accountability Act ("HIPAA"), 29 U.S.C. § § 1182(a)(1); 26 U.S.C. § 9802(a)(1), prohibits health care plans from discriminating against potential enrollees because of their health care status or history. Thus, "a group health plan may not establish rules for eligibility (including continued eligibility) of any individual to enroll under the terms of the plan based" the health status of "the individual or a dependent of the individual." 26 U.S.C. § 9802(a)(1)(A); 29 U.S.C. § 1182(a)(1)(A) (adding to section (1) to apply as well to "a health insurance issuer offering group health insurance coverage in connection with a group health plan."). In addition, the statutes provide that "paragraph (1) shall not be construed–(A) to require a group health plan, or group health insurance coverage, to provide

15

particular benefits other than those provided under the terms of such plan or coverage, or (B) to prevent such a plan or coverage from establishing limitations or restrictions on the amount, level, extent, or nature of the benefits or coverage for similarly situated individuals enrolled in the plan or coverage." 29 U.S.C. § 1182(a)(2)(A-B).  The evidence indicates that the minor plaintiffs are enrolled in the plan and have not been denied services provided by the plan.  Their eligibility to enroll in the plan, therefore, was not affected by their health status.  In addition, any limitations on the coverage that they could use applied to all similarly situated individuals.[6]  The plaintiff's real complaint appears to be that they cannot use New Life, a company whose services they prefer.  Discrimination cannot exist simply because plaintiffs may not use the provider of their choice.  The court will therefore grant defendants' motion on this claim.

### f. Blue Cross Network is not a Proper Party to the Lawsuit

Defendants further argue that Blue Care Network (BCN) is not a proper party to the lawsuit, since BCN is not a party to the agreement between General Dynamics and Blue Cross Blue Shield of Michigan (BCBSM).  As such, BCN does not process claims as they relate to the minor plaintiffs, was not involved in the negotiations that led to the new agreement and not involved in any discussions or negotiations with Accredo related to the new services that company provides.  BCN also did nothing to

---

[6]Plaintiffs A.R. and J.R. are the only individuals in their situation covered by the General Dynamics plan.

proposing the new factor providers to general dynamics, and did not assist General Dynamics in deciding to use a new provider of factor. Plaintiff asserts that evidence indicates that Blue Care Network was involved in the decisions about coverage at issue in this case, and should therefore be liable.

Given the outcome of this case, as described above, the court finds it unnecessary to determine whether BCN is a proper party to the lawsuit. Since all of the claims will be dismissed on the merits, no party could be liable.

**Conclusion**

For the above-stated reasons, the court will grant the defendants' motion to dismiss or for summary judgment. An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **NEW LIFE HOMECARE, INC,** | : | No. 3:08cv1438 |
| J.R., a minor, by and through his | : | |
| natural parent and guardian, Dawn | : | (Judge Munley) |
| E. Litchey, | : | |
| A.R., a minor, by and through his | : | |
| natural parent Dawn E. Litchey; and | : | |
| Dawn E. Litchey, individually, | : | |
| | : | |
| v. | : | |
| | : | |
| **BLUE CROSS BLUE SHIELD OF** | : | |
| **MICHIGAN, and** | : | |
| **BLUE CARE NETWORK OF** | : | |
| **MICHIGAN,** | : | |
| **Defendants** | : | |

## ORDER

**AND NOW**, to wit, this 27th day of February 2009, the defendants' motion to dismiss or in the alternative for summary judgment (Doc. 11) is hereby **GRANTED**. The Clerk of Court is directed to **CLOSE** the case.

                                      **BY THE COURT:**

                                      **s/ James M. Munley**
                                      **JUDGE JAMES M. MUNLEY**
                                      **UNITED STATES DISTRICT COURT**